UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KAREN READ,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL PROCTOR, in his personal capacity; SGT. YURIY BUKHENIK, in his personal capacity; LT. BRIAN TULLY, in his personal capacity; BRIAN ALBERT; NICOLE ALBERT; JENNIFER McCABE; MATTHEW McCABE; and BRIAN HIGGINS<br><br>Defendants | Case No.:  1:25-cv-13588-DJC |

## DEFENDANT LIEUTENANT BRIAN TULLY'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF

Now comes Defendant, Massachusetts State Police Lieutenant Brian Tully (hereinafter "Lt. Tully"), and moves this Honorable Court to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As ground therefore, Defendant states that Plaintiff's Complaint is devoid of sufficient facts to state any claim to relief that is plausible on its face against Lt. Tully.

Solely for the purpose of the instant motion, the Defendant, as required, accepts as true the allegations as set forth in the Plaintiff's Complaint. In her Complaint, Plaintiff brings claims under 42 U.S.C. § 1983 for Malicious Prosecution (Count I); Supervisory Liability (Count II); conspiracy to deprive Plaintiff of her constitutional rights (Count III); Massachusetts Civil Rights Act ("MCRA") (Count IV), and under Common law for malicious prosecution (Count V); intentional infliction of emotional distress (Count VI); and civil conspiracy (Count VII).

1

## STANDARD OF REVIEW

To survive a Motion to Dismiss under Fed. R. Civ. 12(b)(6), a complaint must allege a set of facts "plausibly suggesting (not merely consistent with) an entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). For a complaint to be plausible, the "allegations must be enough to raise a right to relief above the speculative level." Id. at 555. Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d. 301, 305 (1st Cir. 2008). Although a plaintiff in defending a motion under Rule 12(b)(6) need not provide specific facts in support of its allegations, *see Erickson v. Pardus,* 551 U.S. 89, 93, 127 (2007) (*per curiam*). Moreover, "[d]etermimg whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. When considering a motion to dismiss, the Court is tasked with "separat[ing] the factual allegations from the conclusory statements in order to analyze whether the former, if taken as true, set forth a 'plausible, not merely a conceivable, case for relief.'" *Juárez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)).

## ARGUMENT

**1) The Plaintiff's Arrest Was Supported by Probable Cause and Therefore Count I Alleging Malicious Prosecution Under Section 1983 Should be Dismissed.**

In order to prove a case of malicious prosecution under section 1983, a plaintiff must establish three elements, 1) the defendant caused; 2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause; and 3) criminal proceedings terminated in their favor. *Hernandez-Cuevas v. Taylor*, 723 F. 3d 91, 101 (1st Cir. 2013).

In Massachusetts, an arrest warrant issued pursuant to a complaint must be founded upon probable cause supported by oath or affirmation but it is not necessary to recite the facts that constitute probable cause in the complaint. *Comm. v. Baldassini*, 357 Mass. 670, 676 (1970). When there is probable cause for an arrest, the Fourth Amendment's prohibition against unreasonable searches and seizures is not offended. *Acosta v. Ames Department Stores, Inc.,* 386 F.3d 5, 9 (2004) citing *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001).

Probable cause exists, "when an arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators." *Id.* Further, "the uncorroborated testimony of a victim or other percipient witness, standing alone, ordinarily can support a finding of probable cause." *Id.* at 10. Finally, "The test for probable cause 'does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable.'" Id. at 11, quoting *United States v. Winchenbach*, 197 F.3d 548, 555-56 (1st Cir. 1999).

In situations when an arrestee is seized pursuant to a warrant, in most instances, "the neutral magistrate's determination that probable cause exists for the individual's arrest is an intervening act that could disrupt any argument that the defendant officer had caused the continued unlawful seizure." *Hernandez-Cuevas v. Taylor* 723 F. 3d at 100. See also *Sanchez v. Pereira-Castillo*, 590 F. 3d 31, 50 (1st Cir. 2009) ("We employ common law tort principles when conducting 'inquiries into causation under s. 1983.") quoting *Gutierrez-Rodriguez v. Cartagena*, 882 F. 2d 553, 561 (1st Cir. 1989). A plaintiff needs to overcome this causation problem and demonstrate that law enforcement officers were responsible for her continued,

3

unreasonable pretrial detention, if a plaintiff does so, a constitutional injury may have occurred under s. 1983. Id. at 100.

Applying the above law to the facts, and given that all legal action taken against Ms. Read including, but not limited to, the fact that she was rearrested following an indictment by a grand jury and the issuance of an arrest warrant by a Superior Court judge, there were multiple intervening acts that disrupt any argument that Lt. Tully caused the allegedly unlawful seizure. Complaint ¶ 98.

The Plaintiff alleges that she was seized and deprived of her liberty without probable cause in violation of the Fourth Amendment despite the fact that a magistrate found probable cause sufficient to issue a criminal complaint in District Court, a Grand Jury found probable cause to charge the Plaintiff with specific criminal acts, that she was arrested pursuant to a warrant, that there was a jury trial, and that she was ultimately found responsible for operating under the influence. As a consequence, Plaintiff's Count I for violation of § 1983 malicious prosecution should be dismissed.

2) **Plaintiff Does Not Allege Sufficient Facts for Imposition of Supervisory Liability against Lt. Tully**

The legal requirements to state a claim for supervisory liability under § 1983 are exacting and Plaintiff's assertions against Lt. Tully are insufficient to satisfy them. The mere fact that Lt. Tully held the rank of Lieutenant and was in a supervisory position of the Defendants Proctor and Bukhenik, without more, is facially insufficient to support a claim for supervisory liability. A supervisor is not liable merely because a subordinate is alleged to have comitted an unconstitutional act. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir.1994).

It is well settled that a supervisor's liability under a § 1983 claim cannot be predicated simply upon the theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 696 n. 58 (1978); Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014) ("[T]he tort theory of respondeat superior does not allow imposition of supervisory liability under § 1983.") A supervisor "may be found liable only on the basis of her own acts or omissions." Figueroa v. Aponte Roque, 864 F.2d 947, 953 (1st Cir. 1989).

These acts or omissions must constitute not "mere negligence" but "amount to a reckless or callous indifference to the constitutional rights of others." Snell v. DeMello, 44 F. Supp. 2d 386, 390 (D. Mass. 1999), quoting Febus-Rodriguez, 14 F.3d at 92. In addition, there must be an "affirmative link" between the employee's misconduct and the action, or inaction, of the supervisor. Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011). Courts have consistently found that this showing of causation must be a strong one, as that requirement "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Hegarty v. Somerset Cnty., 53 F.3d 1367, 1380 (1st Cir. 1995) (emphasis added).

Plaintiff's allegations against Lt. Tully fall well short of these strict standards and also fail to state a claim for supervisory liability under § 1983 for several reasons. First, and in particular, there are no plausible factual allegations of an "affirmative link" between Lt. Tully, on the one hand, and any specific alleged malfeasance, on the other. Plaintiff's complaint makes comprehensive and specific allegations against other named Defendants as detailed herein. However, the Plaintiff's complaint contains barebones, conclusory allegations against Lt. Tully.

Plaintiff's complaint contends that the other named MSP co-defendants, performed a shoddy investigation and that the other named Defendants never searched for DNA evidence

5

inside the House…," and "never inspected the House Defendants' bodies for indication of bruises or cuts… did not search the House Defendants' cellphones." Complaint ¶ 51.

Plaintiff further contends and takes issue that the other named MSP defendants did not properly interview House Defendants. Complaint ¶ 52. Specifically, Plaintiff states that "Rather than pursuing Higgins as a possible suspect, Proctor, Bukhenik, and Tully neglected to investigate the matter further." Id. at ¶ 59. Even after learning about the destruction of both witnesses' cell phones, MSP investigators had other avenues they could have used to pursue evidence…They intentionally ignored these avenues as well." Id.

Negligent investigations or a failure to pursue an evidentiary lead cannot be the basis for a constitutional claim. To the extent Lt. Tully's acts or omissions amounted to negligent failure to investigate according to plaintiff's subjective standards, they are protected by qualified immunity. See *Daniels v. Williams*, 474 U.S. 327 (1986) (negligence by governmental officials causing unintended loss of rights does not implicate § 1983).

It is salient that the above actions or the others identified in Plaintiff's complaint, only some of which involve or even reference Lt. Tully, are discretionary actions based upon the information available to the officers at the time. These are certainly not 'malicious' acts on the part of Lt. Tully and, at best, are discretionary acts taken by Lt. Tully in the performance of his duties. Juxtaposing the allegations of Lt. Tully's purported conduct against the allegations levied by the Plaintiff against the other MSP co-defendants crystalizes the fact that Lt. Tully's alleged actions and involvement was clearly limited. The Plaintiff's complaint is completely devoid of any allegation that Lt. Tully participated, or was even aware of, the alleged misconduct of co-defendants.

Given the above, Plaintiff has failed to plead allegations that Lt. Tully's actions amounted to reckless or callous indifference to the constitutional rights of others. Febus-Rodriguez, 14 F.3d at 92 (to state a claim for supervisory liability the "supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others"). This standard is a stringent one. County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997) ("[D]eliberate indifference' is a stringent standard of fault, requiring proof that a [State] actor disregarded a known or obvious consequence of his action.") "An official displays such reckless or callous indifference when it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Febus-Rodriguez, 14 F.3d at 92; see Clancy v. McCabe, 441 Mass. 311, 318 (2004).

The Plaintiff's complaint as it pertains to Lt. Tully, fails to allege that "…the official had actual or constructive notice of the constitutional violation." Feliciano-Hernandez, 663 F.3d at 533. Such knowledge is "a prerequisite for stating any claim." Id. at 535; Soto-Torres, 654 F.3d at 160 (plaintiff must allege "facts regarding what [a defendant] is alleged to have known when...how he is alleged to have known it, or how he somehow personally caused" the violation).

3) **Lieutenant Tully is Entitled to Qualified Immunity**

The doctrine of qualified immunity protects government officials from personal liability for civil damage under 42 U.S.C. § 1983 and G.L. c. 12, § 11H, as long as their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Jarrett v. Town of Yarmouth*, 309 F.3d 54, 61 (1st Cir. 2002) (citations omitted); *Guierrez v. Massachusetts Bay Transportation Authority*, 437 Mass. 396, 403 (2002) (qualified immunity principles as developed under federal law protect public officials charged with

violations of the Massachusetts Civil Rights Act) (citations omitted). The qualified immunity defense is favored early in the proceedings so that costs and expenses of trial can be avoided where the defense is dispositive. See *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The question of whether a defendant is entitled to qualified immunity focuses on the "objectively reasonable beliefs and actions of the defendants as to the constitutionality of their actions, even if the beliefs are mistaken." *Diaz-Bigio v. Santini*, 652 F.3d 45, 46 (2011) citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011).

The First Circuit employs a two-prong analysis to determine whether a defendant is entitled to qualified immunity. Id. The court first determines whether the plaintiff has alleged facts sufficient to make out a violation of a constitutional right, and if she does, it considers whether the right was clearly established at the time of the alleged violation. Id. The court next examines "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." Id. citing *Decotiis v. Whittemore*, 635 F.3d 22, 36 (2011). The question at issue is whether the state of the law at the time gave defendant "clear notice that what he was doing was unconstitutional." For immunity not to issue, the unlawfulness of the defendant's act must be apparent at the time of the alleged violation "in the light of pre-existing law." Id. However, even if the 'right' invoked by the plaintiff is clearly established, immunity exists if a reasonable official could have believed, based on the particular facts, that no violation existed. Id.

Qualified immunity is appropriate unless "<u>every</u> reasonable official would have understood that what [defendant] is doing violates plaintiff's constitutional rights." *Diaz-Bigio v. Santini*, 652 F.3d 45, 50-51 (1st Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741

8

(2011) (emphasis in original). Conversely, if reasonably competent officers can disagree on whether the action was unlawful, a grant of immunity is appropriate.

**4) Plaintiff's Claims Against Lt. Tully are Barred by the Massachusetts Tort Claims Act Because He Is a Public Employee and Is Thereby Immune from Liability**

When an individual alleges injuries resulting from a "negligent or wrongful act or omission" of a public employee in the scope of his employment, the Massachusetts Tort Claims Act, G.L. c. 258 ("Act"), immunizes that public employee from suit, and the "exclusive remedy" is an action against the public employer. G.L. c. 258, § 2; *Smith v. Steinberg,* 395 Mass. 666, 667 (1985); *Kelley v. Rossi,* 395 Mass. 659, 661 (1985); *Fearon v. Commonwealth,* 394 Mass. 50, 53 (1985); *Rowe v. Arlington,* 28 Mass. App. Ct. 389, 390 (1990). Section 1 of the Act includes within its categories of public employees any "elected or appointed, officers or employees of any public employer...." G.L. c. 258 § 1. The definition of a "public employer" explicitly includes the Commonwealth. *Id.*

As a department of the Commonwealth, the State Police is a "public employer" under the Act. *See* G.L. c. 258, § 1 (defining "public employers" as any "department, office, commission, committee, council, board, division, bureau, institution, agency or authority" of the Commonwealth). Lt. Tully, as an employee of the State Police, is a public employee within the definition outlined in G.L. c. 258, § 1. Further, Lt. Tully was acting within the scope of his employment at the time of the accident. Indeed, there is nothing in the Plaintiff's Complaint that alleges that Lt. Tully was acting outside the scope of his employment. Accordingly, in the instant action, the Plaintiff is prohibited from recovering damages from Lt. Tully for any alleged negligence attributable to him. Plaintiff's exclusive remedy is an action for damages against the Commonwealth as public employer.

Moreover, Plaintiff seems to allege a global failure to investigate claim against these 'House Defendants'; however, such a cause of action is specifically precluded by the Massachusetts Tort Claims Act (MTCA), G. L. c. 258. The MTCA, G. L. c. 258, § 10(b), provides that municipalities and public employees are immune from tort claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." G. L. c. 258, § 10(b). The investigation of criminal conduct and the seeking of warrants to arrest those who are investigated has been found to fall within the discretionary function exception of § 10(b), as a decision of "whether, when, how, and whom to investigate ...." *Sena v. Commonwealth*, 417 Mass. 250, 256-7 (1994). Thus, it follows that the decision of police to investigate Plaintiff as the perpetrator of a crime and pursue an application for a warrant is a matter falling within § 10(b). Further, any claim based upon a "failure to ... investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects" is barred by the MTCA, c. 258, § 10(h). Thus, to the extent Plaintiff is alleging that Lt. Tully should have done a better job investigating the incident, those allegations do not rise to a viable cause of action. As noted, *supra*, the "mere presence" of a police officer at the scene of an event does not render that officer liable under § 1983. *See Calvi*, 470 F.3d at 428.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed in its entirety with prejudice as it relates the claims against Defendant Lieutenant Brian Tully.

|  |  |
|---|---|
|  | Respectfully submitted,<br>For the Defendant, Lt. Brian Tully<br>By his attorneys, |
| Dated: 01/23/2026 | /s/ *Timothy M. Burke*<br>Timothy M. Burke, Esq., BBO# 065720<br>Jared S. Burke, Esq., BBO# 677851<br>Law Offices of Timothy M. Burke<br>117 Kendrick Street, Suite 300<br>Needham, MA 02494<br>(781) 455-0707<br>tburke@timburkelaw.com<br>burkejared@gmail.com |

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this date.  Email copies will be sent to those listed as non-participants on the ECF system.

Dated: 01/23/2026                                             /s/ Timothy M. Burke