UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

KAREN READ,

      Plaintiff,

v.                                                                      Civil Action No. 1:25-CV-13588-DJC

MICHAEL PROCTOR, in his personal
capacity; SGT. YURIY BUKHENIK, in his
personal capacity; LT. BRIAN TULLY, in his
personal capacity; TOWN OF CANTON;
BRIAN ALBERT; NICOLE ALBERT;
JENNIFER McCABE; MATTHEW
McCABE; and BRIAN HIGGINS,

      Defendants.

**DEFENDANT, YURIY BUKHENIK'S ANSWER
TO PLAINTIFF'S AMENDED COMPLAINT**

The Defendant, YURIY BUKHENIK, (hereinafter "Defendant" or "Bukhenik"), hereby

responds to each numbered paragraph of the Plaintiff's Complaint as follows:

**I.    Introduction**

1-16.  The allegations contained in these paragraphs are introductory in nature and contain legal

conclusions; therefore, no response is necessary. To the extent a response is required,

they are denied. Notwithstanding, Bukhenik and his fellow Massachusetts State Police

Troopers conducted a comprehensive investigation which revealed ample probable cause

to charge the Plaintiff, Karen Read, for causing the death of Officer John O'Keefe by

striking him with her vehicle. The bulk of this section of the Complaint describes a

conspiracy theory not rooted in facts or reality.

1

2

## II.    Parties

17.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

18.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

19.    Admitted that Bukhenik is a Massachusetts State Police Sergeant and resides in Stoughton, Massachusetts. As for the remaining allegations, they contain legal conclusions and therefore, no response is necessary.

20.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

21.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

22.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

23.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

24.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

25.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

## III.    Jurisdiction

26.    The allegations in this paragraph contain legal conclusions; therefore, no response is necessary.

### IV.        Facts Common to all Counts

### Mr. O'Keefe's Death

27.    Admitted.

28.    Denied that Ms. Read consumed "several" drinks, Ms. Read consumed a minimum of 9 alcoholic drinks, far more than "several." Agreed that Mr. O'Keefe and Ms. Read went to C.F. McCarthy's and the Waterfall Bar in Canton.

29.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

30.    Admitted that Brian Albert and Mr. O'Keefe were Boston Police Officers and that Mr. Higgins was an ATF officer. As to the remaining allegations, Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

31.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

32.    Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations.

33.    Denied. The investigation of this incident uncovered no evidence to support the allegations in this paragraph.

34.    The allegations in this paragraph refer to other defendants; therefore, no response is necessary. Nonetheless, the investigation of this incident uncovered no evidence to support the allegations in this paragraph.

35. The allegations in this paragraph refer to other defendants; therefore, no response is necessary. Nonetheless, the investigation of this incident uncovered no evidence to support the allegations in this paragraph.

36. Denied. Nonetheless, the investigation of this incident uncovered no evidence to support the allegations in this paragraph.

37. The video referenced in this paragraph speaks for itself; and further, the investigation did not uncover any wrongdoing by defendant Higgins.

38. The allegations in this paragraph refer to other defendants; therefore, no response is necessary. Nonetheless, the investigation of this incident uncovered no evidence to support the substance of the allegations in this paragraph.

**Ms. Read Searches for Mr. O'Keefe**

39. Bukhenik is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

40. Bukhenik is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph. However, it is believed to be accurate that Ms. Read was the first to locate Mr. O'Keefe under inches of snow as she was aware of his location.

41. The allegations in this paragraph refer to other defendants; therefore, no response is necessary. Bukhenik further states that the recording of the 911 call speaks for itself.

**Investigation Begins**

42. Admitted that the Canton Police Department were the first law enforcement officers on scene. As to the remaining allegations in this paragraph, Bukhenik is without knowledge

and information sufficient to form a belief as to their truth. Nevertheless, O'Keefe's injuries were consistent with being struck by the rear end of Ms. Read's Lexus.

43. Bukhenik is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph. It is admitted that there were several inches of snow and an active and ongoing snow fall at the time.

44. This paragraph contains an opinionated narrative, made obvious by the fact that it begins with the word "tellingly," which requires no response. However, no sirens were used given the early morning hour. Bukhenik is without knowledge and information to form a belief as to the truth of any remaining allegations contained in this paragraph.

45. Bukhenik is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph. However, as stated, it is confirmed that law enforcement entered the House.

46. Bukhenik is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Nevertheless, O'Keefe's injuries were consistent with being struck by the rear end of Ms. Read's Lexus and there was no evidence developed which suggested Mr. O'Keefe entered the House.

47. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

**Proctor Leads MSP Investigation Despite Conflicts**

48. Admitted that Bukhenik was supervising Proctor who was assigned as the case officer, and that Tully was Bukhenik's supervisor in the Norfolk County State Police Detective Unit. Bukhenik denies that he and Tully were aware of any misconduct by Proctor in the handling of this investigation. As to the remaining allegations, they are denied.

5

49.   Proctor was assigned to the investigation according to normal procedure as he was the on-call detective on that date. At the time of the assignment, Bukhenik was not aware of any relationship between Proctor and any of the involved parties. Once Proctor informed Bukhenik of a limited connection, Bukhenik confirmed that there was no conflict requiring reassignment. As to the remaining allegations, they are denied.

**Proctor, Bukhenik, and Tully Engage in a Corrupt and Biased Investigation by Not Investigating Inside the House, and Interviewing House Defendants as Friends Rather than Suspects**

50.   Bukhenik denies the allegations contained in this paragraph insofar as these investigatory steps were not indicated and insofar as their omission impacted the investigation.

51.   Bukhenik denies that the interviews of the House Defendants were outside of normal protocol. Bukhenik admits that the interviews of the House Defendants were not recorded. Bukhenik admits that some House Defendants were interviewed at their lawyer's office as required by the United States Constitution. As to the remaining allegations, Bukhenik is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

52.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary. Bukhenik further states that there has been no evidence discovered to support any wrongdoing by Jennifer McCabe.

53.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary. Bukhenik further states that there has been no evidence discovered to support any wrongdoing by Jennifer McCabe or any other witnesses.

54.   The records referenced it this paragraph speaks for themselves.

55. Bukhenik was not involved in interviewing Kerry Roberts at this time.

56. Bukhenik was not involved in interviewing Kerry Roberts at this time and the texts referenced in this paragraph speaks for themselves.

57. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

58. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

59. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

60. Many of the allegations in this paragraph refer to other defendants; therefore, no response is necessary. As for the allegations that mention Bukhenik he did review Ms. McCabe's phone records and found that she only deleted some texts between herself and her daughter. Bukhenik is confused as to why, as Karen Read alleges, Ms. McCabe would delete texts to people not involved in this matter but leave the so called "planning" texts for all to see if she had anything to hide.

61. The allegations in this paragraph refer to other defendants; therefore, no response is necessary. The Plaintiff does have expertise and experience in crafting stories to the media.

62. Bukhenik denies that he engaged in an unlawful investigation, that he was biased and/or corrupt. As to the remaining allegations, Bukhenik is without knowledge or information sufficient to form a belief as to their truth. It is unclear why Plaintiff is not identifying such "separate law enforcement agency" while relying on such investigation and importantly notes that only an investigation was conducted resulting in no charges or

formal action, indicating that no misconduct was found during the investigation by this "separate law enforcement agency."

63. Bukhenik admits that he interviewed the McCabes and Brian Albert on January 29th at the McCabe's home in Canton. Bukhenik admits that he interviewed Nicole Albert, Brian Higgins, Chris Albert and Julie Albert. As to the remaining allegations, Bukhenik is without knowledge or information sufficient to form a belief as to their truth.

64. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

65. Witnesses were interviewed as it was discovered they had information relevant to the investigation.

66. Denied that Bukhenik failed to conduct a meaningful investigation. Admitted that Bukhenik interviewed Higgins and that Higgins presented some texts between himself and the Plaintiff. Further admitted that Higgins reported that he and Read had kissed.

67. Bukhenik admits that he did not do further interviews with Higgins. Denied that Bukhenik hid any video. The Plaintiff further cites the investigation of a "separate law enforcement agency" as evidence of misconduct, but once again fails to note that such investigation found no misconduct and did not result in any criminal charges. As to the remaining allegations, Bukhenik is without knowledge or information sufficient to form a belief as to their truth.

68. Bukhenik denies that he or any other State Trooper did anything for the "benefit" of the "House Defendants" and states that he conducted a thorough and fair investigation and charged the correct suspect, Karen Read.

69. Bukhenik is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

70. Bukhenik is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

71. Bukhenik is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

72. Bukhenik denies that he or any other State Trooper refused to collect important evidence. Bukhenik further states that the evidence the MSP collected overwhelming demonstrated the guilt of the Plaintiff, Karen Read.

73. Bukhenik is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

74. Bukhenik is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

75. Bukhenik is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

76. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

77. The allegations in this paragraph refer to other defendants; therefore, no response is necessary. Furthermore, Bukhenik denies that any member of the MSP failed to investigate any relevant evidence.

78. Bukhenik states that he and other defendants conducted a comprehensive investigation which revealed ample probable cause to charge the Plaintiff, Karen Read, for causing the death of Officer John O'Keefe by striking him with her vehicle.

79.    The testimony referenced in this paragraph speaks for itself.

80.    The testimony referenced in this paragraph speaks for itself.

81.    Bukhenik conducted a comprehensive investigation which revealed ample probable cause to charge the Plaintiff, Karen Read, for causing the death of Officer John O'Keefe by striking him with her vehicle.

**Rather than Investigate their Friends and Brethren, Proctor, Bukhenik, Tully, and MSP Coordinate with the House Defendants to Target Karen Read**

82.    Denied. After taking routine objective and necessary steps of investigating all aspects of O'Keefe's death, there was an overwhelming amount of evidence implicating the Plaintiff, Ms. Read.

83.    Admitted that Ms. Read's cell phone and her SUV were seized on January 29th. Further admitted that she was arrested approximately 72 hours later. The remaining allegations in this paragraph refer to another defendant; therefore, no response is necessary.

84.    The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

85.    Bukhenik states that Mr. O'Keefe injuries were consistent with a vehicle strike and were not consistent with a fight and a dog attack. The remaining allegations in this paragraph refer to another defendant; therefore, no response is necessary.

86.    Bukhenik states that he was satisfied that defendant Proctor was not bias or conflicted in conducting this investigation. Bukhenik further states that the texts referenced in this paragraph speaks for themselves. Bukhenik denies that he "liked" Proctor's comments about Ms. Read and states that his response was referring to the search of Ms. Read's phone.

87.    The allegations in this paragraph refer to another defendant; therefore, no response is necessary. Bukhenik further states he conducted a comprehensive investigation which revealed ample probable cause to charge the Plaintiff, Karen Read, for causing the death of Officer John O'Keefe by striking him with her vehicle.

**Proctor and Bukhenik Plant Certain Evidence, and Make False Statements in Court and Other Legal Documents to Frame Karen Read**

88.    Bukhenik not only denies but states that the notion that any MSP Trooper "manufactured" the case against the Plaintiff, Karen Read, is preposterous. Bukhenik further states that he and other MSP Troopers conducted a comprehensive and thorough investigation and the suggestion that he and or any other Trooper generated any false and incriminating evidence is fiction.

89.    Bukhenik agrees that Ms. Read's Lexus SUV was seized at her parents' home in Dighton and was towed to the CPD "sallyport." Bukhenik further states that when he observed her SUV in Dighton, he noted a broken taillight.

90.    Denied that Ms. Read's Lexus taillight had a minor crack, and that the taillight was intact before it arrived at the garage. Denied that the crack occurred when Ms. Read backed into Mr. O'Keefe's car at 5 a.m. that morning as she was leaving to search for him. As to the video referenced in this paragraph, it speaks for itself. Bukhenik further states that he observed that the taillight was broken when he first observed in in Dighton.

91.    Admitted that Proctor and Bukhenik followed the vehicle from Dighton to CPD and arrived just moments after the tow truck with the Lexus.  Denied that the taillight was damaged at some point after the vehicle arrived at the sallyport and further states that the taillight was most likely broken when Ms. Read backed into Mr. O'Keefe. The

surveillance video and CPD access card swipe log referenced in this paragraph speaks for themselves.

92.   Bukhenik not only denies but states that the allegations in this paragraph are wholly fictious and preposterous.

93.   Bukhenik denies that he and Procter ever "manipulated" the right rear taillight or presented false evidence. Bukhenik had no role in deleting any footage from any camera and further states that the video recordings speak for themselves.

94.   Bukhenik denies that he did anything to "hide" the videos.  Bukhenik denies that he had any role in "springing" the videos on the defense. Bukhenik denies that he ever provided any false testimony about the video. Bukhenik states that the suggestion that he or any other MSP Trooper attempted to mislead the jury or tapered with the taillight is false and wholly manufactured from someone's fertile imagination.

95.   Bukhenik denies this preposterous allegation contained in this paragraph.

96.   Admitted that Proctor applied for search warrants to the Stoughton District Court and Norfolk Superior Court for searches of Google electronic records, Ring videos, Ms. Read's phone, Ms. Read's vehicle, and cell tower records. Denied that Proctor's assertion that he seized the Lexus at 5:30 p.m. was intentionally false and done to hide any facts as there were numerous ways to confirm the timeline and misrepresenting the time would have served no purpose as the exact timing was and is easily demonstrable.

97.   Bukhenik denies the allegation that there was any false narrative by him or any other MSP Trooper and states that the Plaintiff's suggestion that MSP Troopers planted evidence is wholly without basis of fact.

98. Bukhenik denies that either he or Procter did anything with O'Keefe's cloths designed to taper with the investigation.

99. Bukhenik's memory is that he and Proctor went to the Norfolk District Attorney's Office with O'Keefe's clothing on January 29, 2022. After transferring it to a secure area they laid out the wet clothing on butcher paper to dry out. Bukhenik remained at the Norfolk District Attorney's Office until about 8:30 p.m. Bukhenik further states that he always testified truthfully.

100. Bukhenik vehemently denies that he tapered with O'Keefe's cloths.

101. The document referenced in this paragraph speaks for itself.

102. Denied that Proctor and/or Bukhenik placed pieces of the SUV taillight on the clothes. As to the remaining allegations, Bukhenik is without knowledge or information sufficient to form a belief as to their truth. However, it should be noted that the Plaintiff's narrative contains inconsistencies and defies simple logic - claiming on the one hand that Bukhenik and Proctor had unfettered access to the evidence while on the other hand alleging that they created a complex and convoluted conspiracy to plant evidence at the scene. The Plaintiff's narrative crumbles under the weight of her own storytelling.

103. Bukhenik denies that Proctor or any other member of law enforcement planted any evidence in this investigation and further states the allegations in this paragraph once again are a work of fiction.

### Other Aspects of the Conflicted and Corrupt Investigation

104. Bukhenik denies the allegations contained in this paragraph and further finds them offensive.

105. Denied. Additionally, noting once again that the Plaintiff could have sought a court order or other process, or sent an investigator door-to-door to secure any existing Ring camera footage or surveillance footage and chose not to do so.

106. Admitted that Bukhenik interviewed Brian Loughran, a Town of Canton snowplow operator and relayed all relevant information to the Norfolk District Attorney's Office. As to the remaining allegations, Bukhenik is without knowledge or information sufficient to form a belief as to their truth.

107. Bukhenik is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Bukhenik was unaware of this witness until after the witness had spoken to the Plaintiff's defense team.

108. Denied that Bukhenik never made any effort to track down Mr. Loughlan. As to the remaining allegations, Bukhenik is without knowledge or information sufficient to form a belief as to their truth.

109. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

110. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

111. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

112. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

113. Bukhenik denies that any members of the MSP "hid" any evidence from anyone. He further denies that there was any improper collaboration between the MSP and CPD to "hide" evidence. The videos referenced in this paragraph speak for themselves.

114. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

## The Indictments, Trials, and Aftermath

115. Admitted that the Plaintiff was arrested pursuant to a criminal complaint. As to the remaining allegations, Bukhenik is without knowledge or information sufficient to form a belief as their truth.

116. Admitted that the Plaintiff was later re-arrested. As to the remaining allegations, Bukhenik is without knowledge or information sufficient to form a belief as to their truth.

117. Admitted that the Plaintiff was tried twice by the Commonwealth and that the first trial ended in a hung jury.

118. Bukhenik admits that the Plaintiff was acquitted after the second trial. Bukhenik further states that the notion that there was any deception by "forces aligned against her" was manufactured by her defense team.

119. Bukhenik is without knowledge or information sufficient to form a belief as to the truth of these allegations. Upon information and belief, Ms. Read is marketing her story and her public appearances for substantial compensation. Additionally, much of the public scrutiny she has faced is the result of her and her defense team feeding information to the media.

120. Bukhenik states that there was no "corrupt" prosecution of Ms. Read.

121.   Bukhenik states there was no plan by anyone to "frame" her and the only person responsible for her "extraordinary damages" is Karen Read.

**The House Defendants and Investigators Continue to Lie and Manufacture Evidence, and Coordinate and Conspire Together, Years Later**

122.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

123.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

124.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

125.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

126.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

127.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

128.   Denied. There was no coordination between the House Defendants and MSP, Proctor, Bukhenik, and Tully.

129.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

130.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

131.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

132. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

133. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

134. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

135. Denied, there was no coordination between the investigators and the House Defendants.

136. Bukhenik never fundraised for the House Defendants. As a fellow victim of Karen Read's fanbase's personal attacks, he posted a link on his Twitter account that is designed at defending the truth.

### MSP Investigates and Punishes Proctor, Bukhenik, and Tully for their Misconduct During the Investigation

137. The allegations in this paragraph refer to other defendants; therefore, no response is necessary. Additionally, the Plaintiff could have called Proctor or anyone else as a witness at any time so the suggestion that he was hidden from the jury is intentionally misleading.

138. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

139. Admitted that Bukhenik was transferred. The findings referred to in this paragraph speak for themselves.

140. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

141. The allegations in this paragraph refer to other persons; therefore, no response is necessary.

142.    Bukhenik never had any discussions with Proctor in relation to his Grand Jury testimony.

## V.    Counts

### Count 1 - 42 U.S.C. § 1983 - Malicious Prosecution under the Fourth Amendment
### (Against Proctor, Bukhenik, Tully)

143.    The Defendant hereby repeats his responses to paragraphs 1–142.

144.    The Defendant denies the allegations contained in this paragraph.

145.    The Defendant admits the allegations contained in this paragraph.

146.    The Defendant denies the allegations contained in this paragraph.

147.    The Defendant denies the allegations contained in this paragraph.

148.    The Defendant denies the allegations contained in this paragraph.

149.    The Defendant denies the allegations contained in this paragraph.

150.    The Defendant denies the allegations contained in this paragraph.

151.    The Defendant denies the allegations contained in this paragraph.

### Count 2 - 42 U.S.C. § 1983 – Supervisor Liability
### (Against Bukhenik and Tully in their individual capacity)

152.    The Defendant hereby repeats his responses to paragraphs 1–151.

153.    The Defendant states the allegations contained in this paragraph state a conclusion of law to which the Defendant need not respond.

154.    The Defendant denies the allegations contained in this paragraph.

155.    The Defendant denies the allegations contained in this paragraph.

156.    The Defendant denies the allegations contained in this paragraph.

157.    The Defendant denies the allegations contained in this paragraph.

158.    The Defendant denies the allegations contained in this paragraph.

159.    The Defendant denies the allegations contained in this paragraph.

160. The Defendant denies the allegations contained in this paragraph.

161. The Defendant denies the allegations contained in this paragraph.

### Count 3- 42 U.S.C. § 1983 Conspiracy to Deprive Ms. Read of Her Fourth Amendment Rights
### (Against Proctor, Bukhenik, Tully, the Alberts, the McCabes, and Higgins)

162. The Defendant hereby repeats his responses to paragraphs 1-161.

163. The Defendant denies the allegations contained in this paragraph.

164. The Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

165. The Defendant denies the allegations contained in this paragraph.

166. The Defendant denies the allegations contained in this paragraph.

167. The Defendant denies the allegations contained in this paragraph.

168. The Defendant denies the allegations contained in this paragraph.

169. The Defendant denies the allegations contained in this paragraph.

170. The Defendant denies the allegations contained in this paragraph.

171. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

172. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

173. The Defendant denies the allegations contained in this paragraph.

174. The Defendant denies the allegations contained in this paragraph.

### Count 4 – Massachusetts Civil Rights Act ("MCRA")
### (Against Proctor, Bukhenik, Tully, Alberts, McCabes, and Higgins)

175. The Defendant hereby repeats his responses to paragraphs 1–174.

176. The Defendant denies the allegations contained in this paragraph.

19

177. The Defendant denies the allegations contained in this paragraph.

178. The Defendant denies the allegations contained in this paragraph.

179. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

180. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

181. The Defendant denies the allegations contained in this paragraph.

182. The Defendant denies the allegations contained in this paragraph.

183. The Defendant denies the allegations contained in this paragraph.

184. The Defendant denies the allegations contained in this paragraph.

**Count 5 – Common Law Malicious Prosecution**
**(Against Proctor, Bukhenik, Tully, Alberts, McCabes, and Higgins)**

185. The Defendant hereby repeats his responses to paragraphs 1–184.

186. The Defendant denies the allegations contained in this paragraph.

187. The Defendant denies the allegations contained in this paragraph.

188. The Defendant denies the allegations contained in this paragraph.

189. The Defendant admits the allegations contained in this paragraph, except that Ms. Read was convicted of Operating Her Vehicle While Under the Influence of Intoxicating Liquor.

190. The Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

191. The Defendant is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

192.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

193.   The Defendant denies the allegations contained in this paragraph.

### Count 6 – Intentional Infliction of Emotional Distress
### (Against Proctor, Bukhenik, Tully, Alberts, McCabes, and Higgins)

194.   The Defendant hereby repeats his responses to paragraphs 1–193.

195.   The Defendant denies the allegations contained in this paragraph.

196.   The Defendant denies the allegations contained in this paragraph.

197.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

198.   The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

199.   The Defendant denies the allegations contained in this paragraph.

200.   The Defendant denies the allegations contained in this paragraph.

201.   The Defendant denies the allegations contained in this paragraph.

### Count 7 – Civil Conspiracy
### (Against Proctor, Bukhenik, Tully, Alberts, McCabes, and Higgins)

202.   The Defendant hereby repeats his responses to paragraphs 1 – 201.

203.   The Defendant denies the allegations contained in this paragraph.

204.   The Defendant denies the allegations contained in this paragraph.

205.   The Defendant denies the allegations contained in this paragraph.

206.   The Defendant denies the allegations contained in this paragraph.

207.   The Defendant denies the allegations contained in this paragraph.

208.   The Defendant denies the allegations contained in this paragraph.

209. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

210. The Defendant denies the allegations contained in this paragraph.

211. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

212. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

213. The allegations in this paragraph refer to other defendants; therefore, no response is necessary.

214. The Defendant denies the allegations contained in this paragraph.

215. The Defendant denies the allegations contained in this paragraph.

216. The Defendant denies the allegations contained in this paragraph.

**WHEREFORE,** the Defendant denies that the Plaintiff is entitled to judgment in any amount against the Defendant and asks this Honorable Court to enter judgment for the Defendant and against the Plaintiff along with interests, costs and attorneys' fees.

## AFFIRMATIVE DEFENSES

**AFFIRMATIVE DEFENSE NO. 1**

By way of affirmative defense, the Defendant states that the Complaint fails to state a cause of action against the Defendant upon which relief can be granted.

**AFFIRMATIVE DEFENSE NO. 2**

By way of affirmative defense, the Defendant states that the Defendant is entitled to qualified good faith immunity.

**AFFIRMATIVE DEFENSE NO. 3**

By way of affirmative defense, the Defendant states that his actions are immune from suit as they were discretionary functions.

**AFFIRMATIVE DEFENSE NO. 4**

By way of affirmative defense, the Defendant states that none of his acts or omissions were a proximate cause of injuries or damages, if any, allegedly sustained by the Plaintiff, nor were these alleged injuries or damages caused by any person or entity within the Defendant's responsibility or control.

**JURY DEMAND**

THE DEFENDANT CLAIMS A TRIAL BY JURY AS TO ALL ISSUES PROPERLY TRIABLE TO A JURY.

`

Respectfully submitted,

The Defendant,
YURIY BUKHENIK,
By his attorneys,

*/s/ Leonard H. Kesten*
Leonard H. Kesten, BBO# 542042
Michael V. Glennon, BBO# 678977
Alexander G. Kesten, BBO# 709339
BRODY, HARDOON, PERKINS & KESTEN, LLP
265 Franklin Street, 12th Floor
Boston, MA 02110
(617) 880-7100
lkesten@bhpklaw.com
mglennon@bhpklaw.com
akesten@bhpklaw.com

Dated: April 3, 2026

23

24

## **CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent to those participants indicated as non-registered participants.


/s/ Leonard H. Kesten
Leonard H. Kesten, BBO# 542042


Dated: April 3, 2026