UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KAREN READ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:25-cv-13588-DJC |
| v. | ) | |
| | ) | |
| MICHAEL PROCTOR, in his personal | ) | |
| capacity; SGT. YURIY BUKHENIK, in his | ) | |
| personal capacity; LT. BRIAN TULLY, in | ) | |
| his personal capacity; BRIAN ALBERT; | ) | |
| NICOLE ALBERT; JENNIFER McCABE; | ) | |
| MATTHEW McCABE; and BRIAN | ) | |
| HIGGINS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

---

### DEFENDANT LIEUTENANT BRIAN TULLY'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF

---

Now comes Defendant, Massachusetts State Police Lieutenant Brian Tully (hereinafter "Lt. Tully"), and moves this Honorable Court to dismiss Plaintiff's Amended Complaint (ECF No. 54, filed March 13, 2026) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. As grounds therefore, Defendant states that the Amended Complaint is devoid of sufficient facts to state any claim to relief that is plausible on its face against Lt. Tully. Lt. Tully incorporates and renews all arguments set forth in his original Motion to Dismiss and supplements them herein to address the new and expanded allegations in the Amended Complaint.

Solely for the purpose of the instant motion, the Defendant, as required, accepts as true the allegations as set forth in the Amended Complaint. Plaintiff brings claims under 42 U.S.C. § 1983 for Malicious Prosecution (Count I); Supervisory Liability (Count II); Conspiracy to Deprive Plaintiff of her constitutional rights (Count III); the Massachusetts Civil Rights Act ("MCRA") (Count IV); and under common law for Malicious Prosecution (Count V); Intentional Infliction of Emotional Distress (Count VI); and Civil Conspiracy (Count VII).

1

## STANDARD OF REVIEW

To survive a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege a set of facts "plausibly suggesting (not merely consistent with) an entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). The "allegations must be enough to raise a right to relief above the speculative level." Id. at 555. Dismissal is appropriate where the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008). The Court must "separat[e] the factual allegations from the conclusory statements in order to analyze whether the former, if taken as true, set forth a 'plausible, not merely a conceivable, case for relief.'" Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013). A complaint that offers only "labels and conclusions" or a "formulaic recitation of the elements" of a cause of action "will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. ORIGINAL ARGUMENTS — RENEWED AND SUPPLEMENTED

1) The Plaintiff's Arrest Was Supported by Probable Cause and Therefore Count I Alleging Malicious Prosecution Under § 1983 Should Be Dismissed. (Am. Compl. ¶¶ 143–151)

To prove malicious prosecution under § 1983, a plaintiff must establish: (1) the defendant caused; (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause; and (3) criminal proceedings terminated in their favor. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 101 (1st Cir. 2013). In Massachusetts, an arrest warrant must be founded upon probable cause supported by oath or affirmation. Comm. v. Baldassini, 357 Mass. 670, 676 (1970). When probable cause exists for an arrest, the Fourth Amendment's prohibition against unreasonable seizures is not offended. Acosta v. Ames Department Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004).

Applying the above law to the facts, and given that all legal action taken against Ms. Read including, but not limited to, the fact that she was rearrested following an indictment by a grand jury and the issuance of an arrest warrant by a Superior Court judge, there were multiple intervening acts that disrupt any argument that Lt. Tully caused the allegedly unlawful seizure. Complaint ¶ 98.

The Plaintiff alleges that she was seized and deprived of her liberty without probable cause in violation of the Fourth Amendment despite the fact that a magistrate found probable cause sufficient to issue a criminal complaint in District Court, a Grand Jury found probable cause to charge the Plaintiff with specific criminal acts, that she was arrested pursuant to a warrant, that there was a jury trial, and that she was ultimately found responsible for operating under the influence.

Critically, "the neutral magistrate's determination that probable cause exists for the individual's arrest is an intervening act that could disrupt any argument that the defendant officer had caused the continued unlawful seizure." Hernandez-Cuevas, 723 F.3d at 100. Here, all legal actions taken against Ms. Read—including the magistrate's probable cause finding, the grand jury indictment, and the Superior Court arrest warrant (Am. Compl. ¶¶ 115–116)—constitute multiple intervening acts that sever any causal link between Lt. Tully's alleged conduct and Ms. Read's prosecution. The Amended Complaint identifies no specific act by Lt. Tully that initiated or perpetuated any element of the prosecution. Accordingly, Count I must be dismissed as to him.

2) Plaintiff Does Not Allege Sufficient Facts for Imposition of Supervisory Liability Against Lt. Tully. (Am. Compl. ¶¶ 152–161)

A supervisor is not liable merely because a subordinate is alleged to have committed an unconstitutional act. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994). Supervisory liability under § 1983 cannot rest upon respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 696 n.58 (1978). A supervisor may be found liable "only on the basis of her own acts or omissions," which must amount to "reckless or callous indifference to the constitutional rights of others." Febus-Rodriguez, 14 F.3d at 92. There must also be a strong "affirmative link" between the subordinate's misconduct and the supervisor's action or inaction, one that "led inexorably to the constitutional violation." Hegarty v. Somerset Cnty., 53 F.3d 1367, 1380 (1st Cir. 1995).

It is well settled that a supervisor's liability under a § 1983 claim cannot be predicated simply upon the theory of respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 696 n. 58 (1978); Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014) ("[T]he tort theory of respondeat superior does not allow imposition of supervisory liability under § 1983.") A

supervisor "may be found liable only on the basis of her own acts or omissions." Figueroa v. Aponte Roque, 864 F.2d 947, 953 (1st Cir. 1989).

These acts or omissions must constitute not "mere negligence" but "amount to a reckless or callous indifference to the constitutional rights of others." Snell v. DeMello, 44 F. Supp. 2d 386, 390 (D. Mass. 1999), quoting Febus-Rodriguez, 14 F.3d at 92. In addition, there must be an "affirmative link" between the employee's misconduct and the action, or inaction, of the supervisor. Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011). Courts have consistently found that this showing of causation must be a strong one, as that requirement "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.

The Amended Complaint's assertion at ¶ 48 that Tully "knew at all times the exact extent of Proctor's misconduct" is a bare legal conclusion. No concrete facts—no communications, documents, dates, or meetings—are alleged to establish when or how Lt. Tully learned of any specific misconduct. Soto-Torres v. Fraticelli, 654 F.3d 153, 160 (1st Cir. 2011). The allegation at ¶ 156 that Tully should have replaced Proctor is a quintessentially discretionary supervisory decision beyond the reach of § 1983 liability in the absence of a demonstrated pattern of known violations. The allegation at ¶ 159 that Tully's conduct "constituted condonation of, or acquiescence to" Proctor's and Bukhenik's behavior is a textbook formulaic recitation of a legal standard that Iqbal prohibits. 556 U.S. at 678. Plaintiff has also failed to plead that Lt. Tully had actual or constructive notice of any specific constitutional violation, which is a prerequisite for stating any claim. Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533–35 (1st Cir. 2011). Such knowledge is "a prerequisite for stating any claim." Id. at 535; Soto-Torres, 654 F.3d at 160 (plaintiff must allege "facts regarding what [a defendant] is alleged to have known when...how he is alleged to have known it, or how he somehow personally caused" the violation).Count II should be dismissed.

### 3) Lieutenant Tully Is Entitled to Qualified Immunity.

The doctrine of qualified immunity protects government officials from personal liability under § 1983 as long as their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Jarrett v. Town of Yarmouth, 309 F.3d 54, 61 (1st Cir. 2002). Qualified immunity is appropriate unless "every reasonable official would have

4

understood that what [defendant] is doing violates plaintiff's constitutional rights." Diaz-Bigio v. Santini, 652 F.3d 45, 50–51 (1st Cir. 2011) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). Where reasonably competent officers can disagree on whether an action was unlawful, immunity is appropriate. The supervisory oversight decisions and investigative judgments ascribed to Lt. Tully in the Amended Complaint are exactly the type of discretionary judgments that reasonable officers can and do disagree about. Qualified immunity bars all § 1983 claims against Lt. Tully.

The First Circuit employs a two-prong analysis to determine whether a defendant is entitled to qualified immunity. Id. The court first determines whether the plaintiff has alleged facts sufficient to make out a violation of a constitutional right, and if she does, it considers whether the right was clearly established at the time of the alleged violation. Id. The court next examines "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." Id. citing *Decotiis v. Whittemore*, 635 F.3d 22, 36 (2011). The question at issue is whether the state of the law at the time gave defendant "clear notice that what he was doing was unconstitutional." For immunity not to issue, the unlawfulness of the defendant's act must be apparent at the time of the alleged violation "in the light of pre-existing law." Id. However, even if the 'right' invoked by the plaintiff is clearly established, immunity exists if a reasonable official could have believed, based on the particular facts, that no violation existed. Id.

Qualified immunity is appropriate unless "<u>every</u> reasonable official would have understood that what [defendant] is doing violates plaintiff's constitutional rights." *Diaz-Bigio v. Santini*, 652 F.3d 45, 50-51 (1st Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis in original). Conversely, if reasonably competent officers can disagree on whether the action was unlawful, a grant of immunity is appropriate.

4)  Plaintiff's State Law Claims Against Lt. Tully Are Barred by the Massachusetts Tort Claims Act. (Am. Compl. Counts IV–VII)

The Massachusetts Tort Claims Act, G.L. c. 258 ("MTCA"), immunizes public employees from suit for "negligent or wrongful act[s] or omission[s]" committed within the scope of

employment, with the "exclusive remedy" being an action against the public employer. G.L. c. 258, § 2. Lt. Tully is a public employee of the Massachusetts State Police acting within the scope of his employment. Nothing in the Amended Complaint alleges otherwise.

Further, G.L. c. 258, § 10(b) immunizes public employees from tort claims arising from "the exercise or performance or the failure to exercise or perform a discretionary function or duty." The investigation of criminal conduct and the seeking of warrants falls squarely within this exception. Sena v. Commonwealth, 417 Mass. 250, 256–57 (1994). Any claim based upon a "failure to…investigate, detect or solve crimes" is further barred by G.L. c. 258, § 10(h).

Moreover, Plaintiff seems to allege a global "failure to investigate claim" against the "so-called" 'House Defendants'; however, such a cause of action is specifically precluded by the Massachusetts Tort Claims Act (MTCA), G. L. c. 258. The MTCA, G. L. c. 258, § 10(b), provides that municipalities and public employees are immune from tort claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." G. L. c. 258, § 10(b). The investigation of criminal conduct and the seeking of warrants to arrest those who are investigated has been found to fall within the discretionary function exception of § 10(b), as a decision of "whether, when, how, and whom to investigate ...." Sena v. Commonwealth, 417 Mass. 250, 256-7 (1994). Thus, it follows that the decision of police to investigate Plaintiff as the perpetrator of a crime and pursue an application for a warrant is a matter falling within § 10(b). Further, any claim based upon a "failure to ... investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects" is barred by the MTCA, c. 258, § 10(h). Thus, to the extent Plaintiff is alleging that Lt. Tully should have done a better job investigating the incident, those allegations do not rise to a viable cause of action. As noted, supra, the "mere presence" of a police officer at the scene of an event does not render that officer liable under § 1983. See Calvi, 470 F.3d at 428.

All state law claims against Lt. Tully in Counts IV–VII arise from alleged investigative failures and must be dismissed.

## II. SUPPLEMENTAL ARGUMENTS ADDRESSING PLAINTIFF'S AMENDED COMPLAINT

Lt. Tully submits the following supplemental arguments to address the new and expanded allegations set forth in the Amended Complaint filed March 13, 2026 (ECF No. 54). As demonstrated in the comparison table below, the Amended Complaint represents a substantial—but legally insufficient—expansion of the allegations against Lt. Tully following the filing of his original Motion to Dismiss.

5) Summary of New and Expanded Allegations Against Lt. Tully: Original Complaint vs. Amended Complaint

The following table identifies, by paragraph number, each material new or expanded allegation directed at Lt. Tully in the Amended Complaint as compared to the original complaint filed in Bristol Superior Court on November 17, 2025, and subsequently removed to Federal Court jurisdiction. This comparison is provided to assist the Court in identifying precisely what Plaintiff has added—and why those additions remain legally insufficient—as argued in the sections that follow. Paragraphs flagged as "NEW" were entirely absent from the Plaintiff's original complaint. Paragraphs flagged as "EXPANDED" appeared in the original complaint but have been materially augmented to simply identify Lt. Tully by name or to add new specific allegations against him.

| Topic / Allegation | Original Complaint (Bristol Sup. Ct., Nov. 17, 2025) | Amended Complaint (D. Mass., Mar. 13, 2026) |
| --- | --- | --- |
| Lt. Tully's supervisory role | ¶ 49 — Identifies Tully as supervisory officer at Norfolk County SPDU supervising Bukhenik and Proctor. | ¶ 48 — Substantially identical but now adds that Tully "knew at all times the exact extent of Proctor's misconduct" — language absent from original. |
| Suppression of Proctor's conflicts with the Alberts | Not alleged against Tully. | ¶ 49 — NEW: Tully alleged to have actively suppressed knowledge of Proctor's personal relationships with the Albert family to protect House |

| Topic / Allegation | Original Complaint (Bristol Sup. Ct., Nov. 17, 2025) | Amended Complaint (D. Mass., Mar. 13, 2026) |
|---|---|---|
| | | Defendants and undermine Ms. Read's right to a fair investigation. |
| Failure to search the House / interview House Defendants | Allegations directed primarily at Proctor and Bukhenik; Tully not specifically named. | ¶¶ 50–51, 66–68, 78, 81 — EXPANDED: Tully now explicitly named alongside Proctor and Bukhenik in each specific investigative failure including failure to search House, failure to investigate Higgins, failure to corroborate House Defendants' stories, and failure to investigate 90-minute discrepancy re: Caitlin Albert. |
| Failure to pursue Ford Edge / Brian Loughran lead | Not alleged against Tully. | ¶ 108 — NEW: Tully specifically named as having made no effort to track down snowplow operator Loughran or investigate the Ford Edge. |
| Hiding CPD surveillance video | Not alleged against Tully. | ¶ 113 — NEW ("upon information and belief"): Tully alleged to have collaborated with CPD to hide exculpatory surveillance video showing Higgins's activities at CPD on the night of Jan. 29. |
| McCabe / Sgt. Lank meeting | Not alleged against Tully. | ¶¶ 132–133 — NEW: Tully met with McCabe and NDAO only after Ms. Read's attorneys revealed McCabe's visit to Sgt. Lank's home; neither Tully nor anyone else memorialized that meeting or McCabe's visit. |

| Topic / Allegation | Original Complaint (Bristol Sup. Ct., Nov. 17, 2025) | Amended Complaint (D. Mass., Mar. 13, 2026) |
| --- | --- | --- |
| MSP discipline / reassignment | ¶ 107 — Tully disciplined and reassigned Oct. 18, 2024; stripped of Detective designation. | ¶ 140 — Identical allegation carried forward. |
| Notice of Proctor's misconduct before trial | Not alleged against Tully specifically. | ¶ 142 — NEW: Proctor admitted informing Tully (and others) in Feb. 2024 of prejudicial text messages and Albert relationships; no member of the chain of command sought discipline until after Ms. Read's first trial. |
| Count I — § 1983 Malicious Prosecution | Tully named as defendant. | ¶¶ 143–151 — EXPANDED: Now includes detailed sub-allegations (a)–(f) specifically listing Tully's alleged conduct as direct participant, not merely supervisor. |
| Count II — Supervisory Liability | Tully named as defendant. | ¶¶ 152–161 — EXPANDED: Now enumerates four specific measures Tully allegedly should have taken (¶ 156) and separately characterizes Tully's conduct as "condonation" or "acquiescence" (¶ 159). |
| Count III — § 1983 Conspiracy | Tully named generally. | ¶¶ 162–174 — EXPANDED: Tully now alleged to have "agreed" to fabricate, plant, and manipulate evidence (¶ 166); new overt acts alleged including damaging taillight and depositing pieces at scene. |

| Topic / Allegation | Original Complaint (Bristol Sup. Ct., Nov. 17, 2025) | Amended Complaint (D. Mass., Mar. 13, 2026) |
|---|---|---|
| Count IV — MCRA | Tully named. | ¶¶ 175–184 — EXPANDED: Now specifically alleges Tully's conduct constituted threats, intimidation, and coercion against Ms. Read. |
| Count V — Common Law Malicious Prosecution | Tully named. | ¶¶ 185–193 — EXPANDED: Tully now alleged to have caused Ms. Read's indictment, arrest, and prosecution through specific acts of omission. |
| Count VI — IIED | Tully named. | ¶¶ 194–201 — EXPANDED: Tully now alleged to have caused severe emotional and physical distress through specific investigative failures. |
| Count VII — Civil Conspiracy | Tully named. | ¶¶ 202–216 — EXPANDED: Tully's role in conspiracy now alleged in specific detail including agreement to fabricate evidence and coordinated steps to destroy exculpatory evidence. |

As the table makes plain, the Amended Complaint's expansion of allegations against Lt. Tully is sweeping in breadth but failingly thin in factual substance. The Plaintiff's additions fall into three categories: (1) carrying forward the same conclusory "knowledge" allegation from the original complaint without any supporting facts (¶ 48); (2) adding new "upon information and belief" allegations without factual foundation (¶ 113); and (3) describing facially lawful conduct as if it were conspiratorial (¶¶ 132–133). None of these additions satisfy the pleading standard required by Iqbal and Twombly, as argued in the sections that follow.

6) The Amended Complaint's Expanded Allegations Against Lt. Tully Remain Conclusory and Legally Insufficient Under Twombly/Iqbal.

The Amended Complaint attempts to cure the deficiencies identified in Lt. Tully's original Motion to Dismiss by merely inserting Lt. Tully's name into allegations primarily directed at Proctor and Bukhenik. This approach fails as a matter of law. Merely appending a defendant's name to allegations otherwise directed at other actors does not transform those allegations into plausible claims against that defendant. Iqbal, 556 U.S. at 678. This becomes more apparent when linked to the timing of these additions, which occur only *after* Lt. Tully had filed his Motion to Dismiss.

The Amended Complaint repeatedly groups Lt. Tully with Defendants Proctor and Bukhenik in a formulaic and undifferentiated fashion. See, e.g., Am. Compl. ¶ 50 ("Proctor, Bukhenik, Tully, and the MSP never searched for DNA evidence inside the House"); ¶ 66 ("Proctor, Bukhenik, and Tully likewise failed to conduct a meaningful investigation into Higgins's involvement"); ¶ 78 ("Proctor, Bukhenik, and Tully accepted their coordinated statements without making efforts to corroborate their stories"); ¶ 81 ("Neither Proctor, Bukhenik, Tully, Lank, MSP, or CPD ever further investigated this 90 minute discrepancy"). None of these allegations describe a specific act or omission by Lt. Tully, identify when Lt. Tully personally acted or failed to act, or explain how Lt. Tully's individual conduct—as distinct from Proctor's or Bukhenik's—caused any constitutional injury to Ms. Read. Such group pleading is insufficient. Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (complaint must "make clear exactly who is alleged to have done what to whom").

7) The Amended Complaint Fails to State a Direct Participation Claim Against Lt. Tully Under § 1983. (Am. Compl. ¶¶ 143–151)

The Amended Complaint for the first time attempts to cast Lt. Tully as a direct participant in the alleged malicious prosecution, not merely as a supervisor. See Am. Compl. ¶¶ 144–149. This attempt fails. The Amended Complaint identifies no specific affirmative act by Lt. Tully that caused Ms. Read's seizure. It does not allege that Lt. Tully signed any warrant affidavit, planted any evidence, conducted any critical interview, made any charging decision, or took any specific action in furtherance of the prosecution. The absence of such allegations is fatal to any direct

participation theory. Calvi v. Knox County, 470 F.3d 422, 428 (1st Cir. 2006) (the "mere presence" of a law enforcement officer does not render that officer liable under § 1983).

Ms. Read's prosecution was separated from any conduct attributable to Lt. Tully by multiple independent intervening acts: a magistrate's probable cause finding (Am. Compl. ¶ 115), a grand jury indictment (id.), and the issuance of a Superior Court arrest warrant (Am. Compl. ¶ 116). Hernandez-Cuevas, 723 F.3d at 100. These intervening acts break the causal chain as a matter of law.

Additionally, the Amended Complaint's new allegation at ¶ 48 that Tully "knew at all times the exact extent of Proctor's misconduct" is a legal conclusion masquerading as a factual allegation. It is supported by no concrete facts establishing that Lt. Tully had personal knowledge of Proctor's alleged evidence tampering, false affidavits, or personal communications with the Albert family. Plaintiff is required to allege "facts regarding what [a defendant] is alleged to have known when…how he is alleged to have known it, or how he somehow personally caused" the violation. Soto-Torres, 654 F.3d at 160. She has not done so.

### 8)   The Amended Complaint's New Supervisory Liability Allegations Remain Legally Deficient. (Am. Compl. ¶¶ 152–161)

The Amended Complaint adds four specific affirmative measures that Tully allegedly should have taken: (1) replacing Proctor; (2) safeguarding the crime scene; (3) initiating timely searches at the House; and (4) seizing the House Defendants' phones. Am. Compl. ¶ 156. None of these allegations satisfy the legal standard for supervisory liability.

First, the allegation that Lt. Tully should have replaced Proctor (¶ 156(1)) is a quintessentially discretionary supervisory decision that does not give rise to § 1983 liability in the absence of a demonstrated pattern of known constitutional violations. Febus-Rodriguez, 14 F.3d at 92. No such pattern is alleged with the particularity required by Iqbal.

Second, the allegation that Tully's conduct "constituted condonation of, or acquiescence to, Bukhenik's and Proctor's behavior, or gross negligence amounting to deliberate indifference" (¶ 159) is a verbatim recitation of the legal standard for supervisory liability—not a factual allegation. Iqbal, 556 U.S. at 678. No facts are alleged explaining how, when, or in response to what specific

event Lt. Tully acquiesced in any misconduct.

Third, the allegation that Tully was formally disciplined and reassigned (¶ 140) does not establish a constitutional violation. Internal MSP disciplinary proceedings apply MSP's internal standards, not the § 1983 constitutional standard. A finding of an internal policy violation is legally distinct from a judicial determination that a constitutional right was violated. Daniels v. Williams, 474 U.S. 327, 330–31 (1986). Even negligent or grossly negligent supervision does not give rise to § 1983 liability. County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 407 (1997). The Amended Complaint's reference to the disciplinary finding cannot substitute for the specific factual allegations of deliberate indifference that § 1983 requires.

9)  The New Conspiracy Allegations Against Lt. Tully Are Conclusory and Must Be Dismissed. (Am. Compl. ¶¶ 162–174; 202–216)

To state a § 1983 conspiracy claim, a plaintiff must allege "with at least some degree of particularity, overt acts which defendants engaged in that were reasonably related to the promotion of the claimed conspiracy." Slotnick v. Garfinkle, 632 F.2d 163, 165–66 (1st Cir. 1980). The Amended Complaint alleges at ¶ 163 that Proctor, Bukhenik, and Tully "shared a common design, and acted in concert, to frame Ms. Read," and at ¶ 166 that Tully "agreed" to fabricate, plant, and manipulate evidence. These are entirely conclusory statements. The Amended Complaint identifies no specific agreement involving Lt. Tully, no communication evidencing his participation in any plan to target Ms. Read, and no overt act taken by Lt. Tully personally in furtherance of any alleged conspiracy.

The Amended Complaint also adds two specific new allegations against Tully in support of the conspiracy counts. First, at ¶ 113, it alleges "upon information and belief" that Tully collaborated with CPD to hide exculpatory surveillance video. This allegation is expressly pled on "upon information and belief" with no underlying factual basis whatsoever, and is therefore insufficient. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 596 (1st Cir. 2011).

Second, at ¶¶ 132–133, the Amended Complaint alleges that Tully met with McCabe and the NDAO after Ms. Read's attorneys disclosed McCabe's visit to Sgt. Lank, and that Tully failed to memorialize that meeting. Attending a meeting with a witness and prosecutors is a facially lawful supervisory act. The failure to memorialize such a meeting, even if an administrative

13

deficiency, is not a constitutional violation and cannot serve as an overt act in furtherance of a conspiracy. Daniels, 474 U.S. at 330–31.

The common law civil conspiracy claim (Count VII) likewise fails. Under Massachusetts law, civil conspiracy requires an agreement to accomplish an unlawful purpose or a lawful purpose by unlawful means. Kurker v. Hill, 44 Mass. App. Ct. 184, 188 (1998). No such agreement is factually alleged as to Lt. Tully in the Amended Complaint.

10) The MCRA, Common Law Malicious Prosecution, and IIED Claims Against Lt. Tully Each Fail Independently. (Am. Compl. Counts IV–VI)

Each of Counts IV through VI now names Lt. Tully as a direct defendant but is dependent upon the same insufficient factual predicate described above. Because the allegations against Lt. Tully are conclusory and fail to establish his direct participation, these counts must also be dismissed.

Count IV (MCRA, ¶¶ 175–184): The MCRA requires that the alleged interference be accomplished through threats, intimidation, or coercion directed personally at the plaintiff. Planned Parenthood League of Mass. v. Blake, 417 Mass. 467, 474 (1994). The Amended Complaint at ¶ 176 alleges in conclusory terms that Tully's conduct "interfered or attempted to interfere" with Ms. Read's rights through such means. No specific threatening, intimidating, or coercive act by Lt. Tully directed at Ms. Read personally is alleged anywhere in the Amended Complaint.

Count V (Common Law Malicious Prosecution, ¶¶ 185–193): The elements require that Lt. Tully personally instituted or participated in the institution of the criminal proceeding. Correllas v. Viveiros, 410 Mass. 314, 317 (1991). The Amended Complaint alleges at ¶ 186 that Tully "caused Ms. Read's indictment, arrest, and prosecution" through investigative failures. No facts support that Lt. Tully signed any complaint, provided any evidence to prosecutors, or took any specific action that initiated Ms. Read's prosecution.

Count VI (IIED, ¶¶ 194–201): The standard requires conduct that is "extreme and outrageous" and "beyond all possible bounds of decency." Agis v. Howard Johnson Co., 371 Mass. 140, 144–45 (1976). The Amended Complaint at ¶ 199 conclusory asserts Tully "knew or should have known" his conduct would cause distress. Even accepting this as true, the conduct attributed to Lt.

Tully specifically—supervisory inaction and attendance at a witness meeting—does not approach the extreme and outrageous standard required.

11) The Amended Complaint Is a Transparent Attempt to Cure Pleading Deficiencies Against Lt. Tully and Should Not Be Credited.

A direct comparison of the original complaint (Bristol Superior Court, Nov. 17, 2025) and the Amended Complaint (D. Mass., Mar. 13, 2026) reveals that Plaintiff has strategically expanded allegations against Lt. Tully across six additional counts and simply added him by name to numerous factual paragraphs from which he was previously absent—all following the filing of his Motion to Dismiss. This Court is not required to credit such pleading maneuvers. Iqbal, 556 U.S. at 678. The question is not whether the Amended Complaint contains more words attributing misconduct to Lt. Tully, but whether those words are supported by specific, non-conclusory factual allegations. They are not.

The core "knowledge" allegation—that Tully "knew at all times the exact extent of Proctor's misconduct"—is carried forward verbatim from the original complaint (¶ 49) to the Amended Complaint (¶ 48) without a single supporting fact added. The new allegation at ¶ 113 (hiding video) is expressly pled "upon information and belief" with no factual foundation. The new allegation at ¶¶ 132–133 (McCabe meeting) describes a facially lawful act. This pattern—adding length without adding facts—is precisely what the plausibility standard of Twombly and Iqbal is designed to prevent.

CONCLUSION

For all of the foregoing reasons, Plaintiff's Amended Complaint should be dismissed in its entirety with prejudice as to the claims against Defendant Lieutenant Brian Tully. The Amended Complaint's new and expanded allegations against Lt. Tully remain conclusory, fail to plead sufficient facts to establish direct participation or deliberate indifference, and do not overcome the multiple intervening acts of independent legal process, qualified immunity, or the protections of the Massachusetts Tort Claims Act. Plaintiff's transparent attempt to cure pleading deficiencies by adding Lt. Tully's name to allegations previously directed at others, and by appending "upon information and belief" allegations without factual support, does not satisfy the standard required

by Iqbal and Twombly and should not be credited by this Court.

Respectfully submitted,

For the Defendant, Brian Tully

By his attorneys,

/s/ *Timothy M. Burke*
Timothy M. Burke, Esq., BBO# 065720
Jared S. Burke, Esq., BBO# 677851
Law Offices of Timothy M. Burke
117 Kendrick Street, Suite 300
Needham, MA 02494
(781) 455-0707
tburke@timburkelaw.com
burkejared@gmail.com

Dated: April 3, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this date.  Email copies will be sent to those listed as non-participants on the ECF system.

Dated: April 3, 2026                    /s/ *Timothy M. Burke*